**Tony A. BELL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 82A01–0704–CR–184.**

Court of Appeals of Indiana.

March 7, 2008.

Transfer Denied May 15, 2008.

Matthew Jon McGovern, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Tony A. Bell appeals his convictions for three counts of

Dealing in Cocaine,[1] a class A felony, and Possession of Cocaine,[2] a class D felony. Bell argues that his class A felony convictions should be reversed because the State failed to establish a sufficient chain of custody of the drug evidence supporting his convictions. Additionally, Bell contends that he proved the statutory defense that he was within 1,000 feet of a public park at the request of an agent of a law enforcement officer.

Finding that Bell established that he was within 1,000 feet of a public park at the request of an agent of a law enforcement officer and finding no other error, we affirm in part, reverse in part, and remand with instructions to (1) amend the abstract of judgment by changing Bell's convictions on three counts of dealing in cocaine from class A felonies to class B felonies; and (2) sentence Bell to twenty years imprisonment for each of the three class B felony dealing in cocaine convictions and three years for the class D felony possession of cocaine conviction, to be served concurrently, aggregating to a total sentence of twenty years imprisonment.

## FACTS

On June 27, 2007, Detective Michael Kennedy instructed a confidential informant (CI) working for the Evansville Police Department to contact Bell by telephone to arrange for Bell to deliver crack cocaine to the CI. During the telephone conversation, the CI told Bell that he was "ready to go to the store" and asked Bell, "[y]ou gonna come and get me and take me?" Tr. p. 75. Bell agreed, and after the phone call ended, the CI waited outside of his apartment, which was across the street and within 1,000 feet of a public park, for Bell to arrive. Eventually, a white SUV pulled up next to the CI. The CI entered the vehicle, observed Bell inside, handed Bell the buy money and, in exchange, Bell handed the CI the contraband. The CI returned to his apartment and handed three plastic baggies containing a white rocky substance to Detective Kennedy. It was later revealed that the baggies contained 1.27 grams of cocaine base.

On June 30, 2006, Detective Nathan Schroer set up another controlled buy at the CI's apartment. Thus, the CI again called Bell and told him that he was "ready to go to the store now" and needed to go to the store "twice." Id. at 82–83, 85. Fifteen to twenty minutes later, the same white SUV arrived. Bell was driving the vehicle. The CI entered the vehicle, received several baggies containing a white rocky substance in exchange for money, and exited the SUV. The CI returned to his apartment and handed the baggies to Detective Schroer. Laboratory testing later revealed that the baggies contained 2.69 grams of cocaine base.

On July 6, 2006, Detective Schroer set up a third controlled buy, which proceeded in the same way as the first two. The CI called Bell to arrange the buy, and Bell arrived at the CI's apartment in the white SUV shortly after the phone call was completed. The CI entered Bell's vehicle and received nine baggies containing a white rocky substance in exchange for money. The CI returned to his apartment and handed the baggies to a detective. Testing later revealed that the baggies contained 4.01 grams of cocaine base.

Shortly after the SUV drove away from the CI's apartment on July 6, uniformed officers stopped the vehicle, apprehending Bell and another man. Bell was carrying $200 and the other man was carrying $300

---

1. Ind.Code § 35–48–4–1.

2. I.C. § 35–48–4–6.

of the prerecorded money used in the controlled buy. Police officers later searched Bell's residence and found three baggies containing 1.26 grams of cocaine base.

On July 11, 2006, the State charged Bell with three counts of class A felony dealing cocaine and one count of class D felony possession of cocaine. A jury trial was held on February 20–22, 2007, at the conclusion of which the jury found Bell guilty as charged. Following a March 20, 2007, sentencing hearing, the trial court found no mitigating circumstances and two aggravating factors—Bell's prior criminal history and the nature of the offense. The trial court sentenced Bell to fifty years imprisonment on each class A felony conviction and three years on the class D felony conviction, to be served concurrently. Bell now appeals.

## DISCUSSION AND DECISION

### I. Chain of Custody

██ Bell first argues that the trial court erroneously admitted the drug evidence seized from the June 27 and June 30 controlled buys because the State failed to present a sufficient chain of custody for the evidence. The decision to admit or exclude evidence lies within the trial court's sound discretion and is afforded great deference on appeal. *Bacher v. State*, 686 N.E.2d 791, 793 (Ind.1997).

██ Physical evidence is admissible "if the evidence regarding its chain of custody strongly suggests the exact whereabouts of the evidence at all times." *Culver v. State*, 727 N.E.2d 1062, 1067 (Ind. 2000). In other words, the State must give "reasonable assurances that the property passed through various hands in an undisturbed condition." *Id.* Because the State need not establish a perfect chain of custody, slight gaps go to the weight, not the admissibility, of the evidence. *Id.*

There is a presumption of regularity in the handling of exhibits by public officers. *Murrell v. State*, 747 N.E.2d 567, 572 (Ind. Ct.App.2001). Thus, merely raising the possibility of tampering is insufficient to make a successful challenge to the chain of custody. *Cockrell v. State*, 743 N.E.2d 799, 809 (Ind.Ct.App.2001).

██ With respect to the June 27 controlled buy, Detective Kennedy testified that the CI handed him three plastic baggies after the buy was completed. The detective than handed the baggies to Detective Schroer, who testified that he did, in fact, receive the baggies from Detective Kennedy, although he could not remember for sure how many baggies he received. Detective Schroer placed the baggies in an evidence bag, sealed it, and placed it in the secure narcotics evidence drop box. Evidence custodian Karin Montgomery is the only person who has a key to that drop box. She testified that on June 28, she retrieved the evidence bag from the drop box, processed it, and placed it in the secure evidence room in her custody. When Montgomery retrieved the bag and sent it to the lab on February 13, it had not been altered in any way, and when the lab received the bag on February 14, it was sealed. At trial, Detective Schroer identified State's Exhibit 3 as the same baggies, noting that the evidence bag bore his signature, the date, and the case number. Chemist Rebecca Nickless identified Exhibit 3 as the same evidence that she had tested on February 14.

Bell challenges the chain of custody of Exhibit 3 based on two facts: (1) the CI testified that he was not sure how many baggies he had received from Bell and in his deposition he attested that he thought he had received more than three baggies; and (2) Montgomery testified that when she retrieved the sealed evidence bag from the drop box, the tape that Detective

Schroer had placed on the bag to seal it did not go all the way to the edge of the bag, so Montgomery placed some more tape on the bag to seal it to the edge so that the lab would accept it.

We do not find these facts sufficient to raise a viable challenge to the chain of custody of this evidence. Although the CI could not remember for sure how many baggies he had received from Bell, he testified that he gave them all to Detective Kennedy, and the detective testified that it was three baggies. Moreover, Montgomery testified that the evidence bag *was* sealed when she retrieved it from the drop box; she merely explained that because the lab will not accept evidence unless the seal extends from edge to edge, she placed more tape on the bag's edge. Montgomery is the only one with a key to the box, so no one else could have accessed the evidence. The mere possibility of tampering is not enough to invalidate the chain of custody, and at most, that is all that Bell's argument creates. Consequently, we decline to find that the State failed to establish a sufficient chain of custody for the June 27 drug evidence.

■ Turning to the drug evidence seized following the June 30 controlled buy, Detective Kamire testified that the CI gave the baggies to him after the buy was completed and that the detective then handed the baggies to Detective Schroer. Detective Schroer then placed the baggies in an evidence bag, sealed it, and placed it in the secure narcotics evidence drop box. Montgomery testified that she retrieved the evidence bag from the drop box, processed it, and placed it in secure storage until she sent it to the lab on February 13. Nickless testified that she received the bag in a sealed condition at the lab. Detective Schroer identified State's Exhibit 5 as the same bag because it bore his writing and initials.

Bell directs our attention to the fact that Detective Schroer indicated that there were five baggies placed in the evidence bag but that when Nickless opened the sealed bag in the lab, there were six baggies. Given the presumption of regularity afforded to the handling of evidence, we do not find this fact to be sufficient to establish that tampering occurred. It may raise a possibility of tampering, but again, that is not enough. In all likelihood, Detective Schroer simply miscounted the baggies when placing them inside the evidence bag. At all points in the chain of custody after the detective placed the baggies into the evidence bag, the evidence was maintained in a secure location. The handwriting and offense number on the exhibit established that it was the same item that was originally placed into evidence. Thus, Bell has failed to establish any gaps in the chain of custody. We decline to find that the State failed to establish a sufficient chain of custody for the June 30 drug evidence.

## II.  Entrapment Defense

■ Bell next contends that the State failed to rebut Bell's statutory entrapment defense that he was only within 1,000 feet of a public park at the request of an agent of the police. When reviewing a defense, we apply the same standard of review as that applied to other challenges to the sufficiency of the evidence. *Dockery v. State,* 644 N.E.2d 573, 578 (Ind.1994) (reversing the defendant's conviction because there was insufficient evidence rebutting his entrapment defense); *Weaver v. State,* 643 N.E.2d 342, 343–44 (Ind.1994) (reviewing the sufficiency of the evidence rebutting the defendant's voluntary intoxication defense). Thus, we will neither reweigh the evidence nor judge the credibility of witnesses, instead considering only the evidence supporting the verdict and the rea-

sonable inferences that may be drawn therefrom. *Dockery*, 644 N.E.2d at 578.

■ Indiana Code section 35–48–4–16(c) provides that "[i]t is a defense for a person charged under this chapter ... that a person was ... within one thousand (1,000) feet of ... a public park ... at the request or suggestion of ... an agent of a law enforcement officer." Entrapment is a defense of justification, which "admit[s] that the facts of the crime occurred but contend[s] that the acts were justified." *Moon v. State*, 823 N.E.2d 710, 716 (Ind. Ct.App.2005), *trans. denied* (citing *Hoskins v. State*, 563 N.E.2d 571, 576 (Ind. 1990) (including entrapment as a "true affirmative defense[, which] is a defense not because the defendant acted without the requisite mental state, but because his knowing or intentional acts are excused or justified")). According to the *Moon* court,

> these [justification] defenses negate no element of the crime. Indiana has allocated the burden as to these defenses in two steps. First, the defendant must produce evidence raising the defense. Second, the State must negate at least one element of the defense beyond a reasonable doubt.

*Id.* (citations omitted). And as our Supreme Court emphasized, even if a defendant bears a partial burden of proving a defense, "the State retains the ultimate burden of proving beyond a reasonable doubt every element of the charged crime, including culpability or intent...." *Hoskins*, 563 N.E.2d at 576.

■ Here, the evidence in the record establishes that each of the three controlled buys proceeded in essentially the same manner. Specifically, a detective directed the CI "to make a telephone call to [Bell] and arranged for Mr. Bell to deliver the crack cocaine to [the CI]." Tr. p. 288. A transcript of one of the telephone calls reveals that the CI told Bell that "I'm

ready to go to the store. You gonna come and get me and take me?" *Id.* at 75, 246–47. Police officers and the DEA set up surveillance from inside the CI's apartment to witness the interaction between the CI and Bell. An investigating officer and the CI corroborated this version of events, testifying that the police and CI initiated the controlled buys by calling Bell and requesting him to come to the CI's apartment.

The State is unable to direct our attention to any evidence contradicting the evidence establishing that Bell was summoned to the CI's apartment by the CI at the behest of the police. Instead, the State argues that the CI did not give Bell the address to his apartment; consequently, Bell had evidently been there before and knew that it was across the street from a park. The State points out that the CI did not suggest that the deal should occur at or outside of his apartment and that Bell was free to drive to another location to conduct the drug deal. We do not find this to be a compelling argument. The State could make just such an argument—that the defendant could have said no or suggested an alternate location, notwithstanding the involvement of the police—in every entrapment case. The statute provides that it is a defense that the defendant was within 1,000 feet of a public park at the request or suggestion of an agent of a law enforcement officer and does not include a caveat regarding the defendant's ability to move the criminal activity to another location.

The State also argues that as a matter of policy, this is not the type of situation to which the defense was intended to apply. Specifically, the State contends that the statute should not apply because

> this is not a case where the police were somehow tricking Defendant into making his delivery within 1000 feet of an

unknown park or school nor is it a case where the police were directing Defendant to drive to a particular route solely for the purpose of bringing him within 1000 feet of a given location.

Appellee's Br. p. 9. Turning again to the language of the statute, we observe that nothing in the statute indicates that it is to apply only when the police or an agent thereof somehow "trick" the defendant into engaging in a drug deal within 1000 feet of a public park. Thus, we cannot conclude that the defense is unavailable to Bell for this reason.

Ultimately, we find that Bell has established that he was within 1,000 feet of a public park only at the request or suggestion of an agent of a law enforcement officer and that the State has failed to negate one of the elements of this defense beyond a reasonable doubt. Thus, we reverse and remand with instructions to amend the abstract of judgment by changing Bell's convictions on three counts of dealing in cocaine from class A felonies to class B felonies.

When sentencing Bell on three counts of class A felony dealing in cocaine, the trial court imposed three concurrent maximum terms of fifty years imprisonment each. Ind.Code § 35–50–2–4 (providing that a person who commits a class A felony faces between twenty and fifty years imprisonment, with an advisory sentence of thirty years). The court found the nature of Bell's offenses and Bell's criminal history to be aggravating circumstances. Bell's criminal history includes the following convictions: class B misdemeanor battery, three counts of class D felony dealing in marijuana, class D felony maintaining a common nuisance, two counts of class D felony failure to remit Indiana Withholding Tax, class B felony dealing in cocaine, class A misdemeanor possession of marijuana,

and class C felony dealing in marijuana. The court found no mitigating factors.

■■■■ Bell now faces three convictions for class B, rather than class A, felony dealing in cocaine. Indiana Code section 35–50–2–5 provides that a person who commits a class B felony shall be imprisoned between six and twenty years, with the advisory sentence being ten years. Given Bell's lengthy and unrelenting criminal history and the trial court's previous decision to impose the maximum sentence for the class A felony convictions, we find that Bell should likewise face the maximum sentence for class B felony convictions—twenty years.

At the sentencing hearing the trial court made the following comment:

> if it's found that these sentences ... the convictions for class A felonies fail, and that there wasn't evidence to support those, that with the facts surrounding the case and the prior history of Mr. Bell[,] the Court, in that instance if it happens, would aggravate the sentences to get up above the twenty (20) because the Court feels that the appropriate sentence is in excess of twenty (20) years for his on-going, continu[ing] dealing in controlled substances anytime he's released from the Department of Corrections [sic].

Sentencing Tr. p. 553–54. To impose an aggregate sentence of over twenty years, a portion of Bell's sentences would have to be served consecutively. We appreciate the trial court's analysis and reasoning, but under these circumstances, consecutive sentences are inappropriate. In *Beno v. State*, our Supreme Court considered a similar situation in which a trial court imposed consecutive sentences on the defendant for multiple drug offenses he committed as part of a police sting operation. 581 N.E.2d 922 (Ind.1991). In reversing the

consecutive sentences, the *Beno* court commented as follows:

> Beno not only received the maximum possible sentence for each offense, but the sentences were to run consecutively. Our decision does not question a trial judge's discretion to both aggravate a sentence to its maximum amount and determine that the sentences should run consecutively. We simply hold that, in this case, such sentencing is not appropriate. Beno was convicted of committing virtually identical crimes separated by only four days. Most importantly, the crimes were committed as a result of a police sting operation. As a result of this operation, Beno was hooked once. The State then chose to let out a little more line and hook Beno for a second offense. There is nothing that would have prevented the State from conducting any number of additional buys and thereby hook Beno for additional crimes with each subsequent sale. *We understand the rationale behind conducting more than one buy during a sting operation, however, we do not consider it appropriate to then impose maximum and consecutive sentences for each additional violation.* If Beno, for instance, had sold drugs to different persons, or if he had provided a different type of drug during each buy, the consecutive sentences imposed might seem more appropriate. Here, however, because the crimes committed were nearly identical State-sponsored buys, consecutive sentences were inappropriate.

*Id.* at 924 (emphasis added). Thus, notwithstanding the trial court's comments at Bell's sentencing hearing, we direct the trial court to sentence Bell as follows: twenty years imprisonment for each of the three class B felony dealing in cocaine convictions and three years for the class D felony possession of cocaine conviction, to be served concurrently, aggregating to a total sentence of twenty years imprisonment.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions to (1) amend the abstract of judgment by changing Bell's convictions on three counts of dealing in cocaine from class A felonies to class B felonies; and (2) sentence Bell to twenty years imprisonment for each of the three class B felony dealing in cocaine convictions and three years for the class D felony possession of cocaine conviction, to be served concurrently, aggregating to a total sentence of twenty years imprisonment.

DARDEN, J., and BRADFORD, J., concur.