**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

**FILED**

Mar 26 2012, 8:22 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PHYLLIS J. EMERICK**
Deputy Public Defender
Bloomington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| LAWRENCE ROPER, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 53A02-1108-CR-808 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Kenneth G. Todd, Judge
Cause Nos. 53C03-0909-FA-817 & 53C03-0909-FB-751

**March 26, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Following a jury trial, Lawrence Roper was convicted of two counts of Class B felony dealing in cocaine and sentenced to concurrent terms of twenty years. Roper now appeals, challenging the chain of custody of the cocaine for one of his convictions and the appropriateness of his aggregate twenty-year sentence. Concluding that the State sufficiently demonstrated the chain of custody for the cocaine and the trial court did not abuse its discretion in admitting it, and that Roper has failed to persuade us that his twenty-year sentence is inappropriate, we affirm.

**Facts and Procedural History**

On August 6, 2009, confidential informant Charles Brutton contacted the Bloomington Police Department and said that he could arrange a purchase of cocaine from a man later identified as Roper. Detective William Jeffers met with Brutton and had him call Roper to arrange the buy, searched Brutton and his car, and provided Brutton with $100 in buy money and an audio-video recording device. Detective Jeffers followed Brutton to a gas station and conducted visual surveillance of the buy. Roper arrived in a white Toyota Camry driven by a female. Roper exited the Camry, entered Brutton's vehicle briefly and performed the deal, and then returned to the Camry, which drove away. Detective Jeffers then met with Brutton, who turned over the cocaine and the recording. Detective Jeffers again searched Brutton and his car.

On August 31, 2009, Brutton again contacted the Bloomington Police Department and said that he could arrange a purchase of cocaine from Roper. Brutton met with Detective Brandon Lapossa, who had Brutton call Roper to arrange the buy, searched

Brutton and his car, and provided Brutton with $225 in buy money and an audio-video recording device. Detective Lapossa followed Brutton to Kroger and conducted visual surveillance. Roper arrived in the same white Camry driven by a female. Roper exited the Camry, entered Brutton's car briefly and performed the deal, and then returned to the Camry. Detective Lapossa then met with Brutton, who turned over the cocaine and the recording. Detective Lapossa again searched Brutton and his car.

The State charged Roper with Class B felony dealing in cocaine for the August 6 buy under Cause No. 53C03-0909-FB-751 (Cause No. 751) and Class A felony dealing in cocaine for the August 31 buy under Cause No. 53C03-0909-FA-817 (Cause No. 817). The cases were later joined, and the Class B felony charge under Cause No. 751 became Count II and the Class A felony charge under Cause No. 817 became Count III.[1]

A jury trial was held at which Roper objected to the admission of State's Exhibits 4 and 11 on grounds of chain of custody. Exhibit 4 is the cocaine from the August 31 buy, and Exhibit 11 is the Certificate of Analysis for that cocaine.[2] Specifically, Detective Lapossa testified that the controlled buy at issue occurred on August 31. At the conclusion of the buy, Brutton gave the cocaine to Detective Lapossa. Detective Lapossa then put the cocaine into a sealed envelope, which was marked with his initials, the event (or "CFS") number, the item number, the date of the buy, and a description of the item. Tr. p. 72, 295. Detective Lapossa put the envelope in the drop safe for the evidence

---

[1] The State charged Roper with a second count of Class A felony dealing in cocaine under Cause No. 817, and this count became Count I. Because the jury found Roper not guilty of Count I, we do not address the facts surrounding this charge on appeal.

[2] Roper did not object to the cocaine from the August 6 buy and therefore does not challenge that conviction on appeal.

3

technician. *Id.* The only people who have the combination to the safe are the evidence clerks. *Id.* at 243-44.

Evidence clerk Andy Cradick retrieved Exhibit 4 from the drop safe on September 2, 2009. *Id.* at 250. He logged in the evidence and then put the envelope in the secured evidence storage room. *Id.* The evidence remained there until he took it to the Indiana State Police Laboratory for testing on February 15, 2010. *Id.* at 252-53, 267.

According to Haley Newton, the Indiana State Police Laboratory analyst, Exhibit 4 was either in her custody or in the locked evidence locker while it was at the lab. *Id.* at 227-28. It showed no signs of being tampered with, and it was in the same condition at trial, with the seal intact, as it had been when Newton returned it to the lab's evidence clerk after testing. *Id.* at 227-29. Cradick retrieved Exhibit 4 from the Indiana State Police Laboratory on March 25, 2010, and it remained in his custody in the secured evidence storage room until it was checked out by the detective for trial. *Id.* at 253-54.

Roper argued that despite this evidence, the chain of custody was defective because (1) there are allegedly two property sheets for Exhibit 4 and (2) the property sheets and a portion of the probable cause affidavit indicate that the buy occurred on July 31, 2009, instead of August 31, 2009. The trial court heard considerable testimony outside the presence of the jury, *id.* at 269-94, and then concluded that it was going to admit Exhibits 4 and 11 provided that the State cleared up the issues in the presence of the jury, *id.* at 292. The jury returned to the courtroom, at which point the issues were explored. The court formally admitted Exhibits 4 and 11. *Id.* at 308.

4

The jury found Roper guilty of Count II Class B felony dealing in cocaine and Count III Class B felony dealing in cocaine as a lesser-included offense of Class A felony dealing in cocaine. The trial court identified the following aggravators: (1) Roper was on parole at the time of these offenses; (2) Roper has an extensive juvenile and criminal history, including a probation violation; (3) Roper was unemployed with no means of "legitimate" support; and (4) Roper was unsuccessful with his previous substance-abuse treatment. *Id.* at 443-45. The court identified Roper's supportive family, remorse, and intent to reform as mitigators. *Id.* at 446. Concluding that the aggravators "vastly" outweighed the mitigators, the court sentenced Roper to twenty years for each conviction, to be served concurrently. *Id.* at 447.

Roper now appeals.

## Discussion and Decision

Roper raises two issues on appeal. First, he contends that the trial court erred in admitting the cocaine from the August 31 buy and the Certificate of Analysis for that cocaine because of an inadequate chain of custody. Second, he contends that his twenty-year sentence is inappropriate.

## I. Chain of Custody

Roper first contends that the trial court erred in admitting Exhibits 4 and 11 because of chain of custody problems. Generally, the sufficiency of an evidentiary foundation is a matter left to the trial court's sound discretion, and we will reverse only upon a showing of an abuse of that discretion. *Payne v. State*, 658 N.E.2d 635, 644 (Ind. Ct. App. 1995), *trans. denied*. An abuse of discretion occurs if a trial court's decision is

5

clearly against the logic and effect of the facts and circumstances before the court. *Roush v. State*, 875 N.E.2d 801, 808 (Ind. Ct. App. 2007).

Regarding chain of custody in particular, physical evidence is admissible "if the evidence regarding its chain of custody strongly suggests the exact whereabouts of the evidence at all times." *Bell v. State*, 881 N.E.2d 1080, 1084 (Ind. Ct. App. 2008) (quotation omitted), *trans denied*. In other words, the State must give "reasonable assurances that the property passed through various hands in an undisturbed condition." *Id.* (quotation omitted). Because the State need not establish a perfect chain of custody, slight gaps go to the weight, and not the admissibility, of the evidence. *Id.* There is a presumption of regularity in the handling of exhibits by public officers. *Id.* Thus, merely raising the possibility of tampering is insufficient to make a successful challenge to the chain of custody. *Id.*

Despite the State's evidence, which strongly shows the exact whereabouts of Exhibit 4 at all times and provides reasonable assurances that it passed through the various public officers' hands in an undisturbed condition, Roper argues that there are two problems with the chain of custody: (1) there are allegedly two property sheets for Exhibit 4 and (2) the property sheets for Exhibit 4 and a portion of the probable cause affidavit indicate that the controlled buy occurred on July 31, 2009, instead of August 31, 2009.

We address the date discrepancy first. The record shows that the property sheet for Exhibit 4 lists "07/31/09" instead of 08/31/09. *See* Defendant's Exs. C & D. However, Detective Lapossa clearly explained – both in the jury's presence and outside

the jury's presence – that he "just made a mistake in writing a 7 instead of an 8." Tr. p. 303-04; *see also id.* at 300 (calling it a "clerical error"), 271 (testimony outside presence of jury). Detective Lapossa testified that the correct date was August 31 and this was the date that he wrote everywhere else, including his buy notes, the buy money, and the case report. *Id.* at 303-04. The informant, Brutton, also testified that the buy occurred on August 31, 2009. *Id.* at 163. Most critically, Detective Lapossa wrote August 31 on Exhibit 4 itself. *Id.* at 295; *see also id.* at 279 (testimony outside presence of jury). In addition, even though the property sheet lists the wrong date, the same unique CFS number is written on both Exhibit 4 and the property sheet. *Id.* at 302. Finally, although the probable cause affidavit contains the inaccurate July 31 date in the introduction, the narrative body of the affidavit contains the accurate August 31 date several times. Defendant's Ex. E; Tr. p. 304; *see also* Tr. p. 280-81 (testimony outside presence of jury). There are several identifiers to show that Exhibit 4 was the same cocaine that was purchased from Roper on August 31 and then sent to the lab and tested.

As for whether there are two property sheets for Exhibit 4 instead of just one, we note that the record indeed contains two property sheets for the same cocaine. *See* Defendant's Exs. C & D. However, it does not appear that there are actually two *different* property sheets, as Roper would have us believe. Rather, it appears that Defendant's Exhibits C and D are copies of the same form. The record shows that a property sheet is filled out in triplicate: the original white copy goes to the evidence clerk, the yellow copy goes to the Records Department, and the pink copy eventually makes it way to the prosecutor's office. Tr. p. 296-97; *see also id.* at 285-86 (testimony outside

presence of jury).  Because an officer generally does not have the "DR" number[3] when filling out the form in triplicate, the "DR" number is left blank and the Records Department fills it in later.  The three-part copy becomes separated when the officer puts the evidence in the drop safe.  *Id.* at 289 (testimony outside presence of jury).  That is, the officer leaves the original white copy with the evidence clerk and then sends the pink and yellow copies "upstairs."  *Id.* at 290 (testimony outside presence of jury).

Regarding Exhibits C and D, Detective Lapossa testified that both property sheets were in his handwriting, except for the "DR" number on both exhibits and the information in the "Do Not Write" columns (which are for tracking purposes) on Exhibit D.  *Id.* at 296-98; *see also id.* at 271-72 (testimony outside presence of the jury).  In all other respects the writing on the two exhibits is identical.  *See id.* at 263 (trial court commenting, "As I look at these 2 forms to the untrained eye it would appear that the markings in each of the blocks are the same except for the DR number and then down here where it says do not write in columns below there's information inserted on defendant's exhibit D that's not on defendant's exhibit C[.]").  Detective Lapossa explained that he did not fill out the "DR" number because the Records Department assigns the "DR" number at a later point and therefore he did not have that number when filling out the form in triplicate.  *Id.* at 296-98; *see also id.* at 271-72, 285, 288 (testimony outside presence of jury).  Evidence clerk Cradick explained that because the DR number is written in later (at which point the three copies are already separated), this explains why the handwriting for the "DR" number is different on both Exhibits C and D.  *Id.* at

---

[3] Detective Lapossa explained that the officers "work off the CFS number" and the "DR number is basically for clerical staff."  Tr. p. 298.

8

285 (testimony outside presence of jury). Cradick also reiterated that the evidence clerk has only the white copy; therefore, it makes sense that the tracking information in the "Do Not Write" columns appears only on one of the exhibits. This evidence shows that there are not two different property sheets for the same cocaine; rather, Exhibits C and D are copies of the same property sheet that was filled out in triplicate by Detective Lapossa, separated and sent to different locations, and then later had information added to each sheet. Roper's concerns, which he pointed out for the jury, go only to the weight, and not the admissibility, of the evidence. The trial court did not abuse its discretion in admitting Exhibit 4 and Exhibit 11, which was dependent on Roper's challenge to Exhibit 4.

## II. Inappropriate Sentence

Finally, Roper contends that his aggregate sentence of twenty years is inappropriate in light of "the nature of his offense and his professed intent to reform himself." Appellant's Br. p. 5. Roper therefore asks us to "reduce the executed portion of his sentence from twenty (20) years to sixteen (16) years, suspending the remaining four (4) years to probation." *Id.* at 8.

Our rules authorize revision of a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "[A] defendant must persuade the appellate court that his or her sentence has met this inappropriateness standard of review." *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case. *Id.* at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether sentences are to be served concurrently rather than consecutively. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010).

A person who commits a Class B felony shall be imprisoned for a fixed term between six and twenty years, with the advisory sentence being ten years. Ind. Code § 35-50-2-5. Here, the trial court sentenced Roper to concurrent terms of twenty years.

As for the nature of the offenses, we acknowledge that there is nothing particularly heinous about these controlled buys involving the same informant. The unemployed Roper explained that he dealt drugs to support his $300-a-day drug habit. Appellant's Confidential App. p. 9.

Roper's character, however, tells quite a different story. At the time of these offenses, the twenty-six-year-old Roper was a daily cocaine user with a rather significant criminal history. As a juvenile, Roper had true findings for burglary, battery, and theft, and he violated his suspended commitment to the Indiana Boys School. As an adult, Roper was convicted of Class B felony battery in 1998, Class A felony dealing in cocaine

10

in 2004, and Class D felony intimidation and Class A misdemeanor domestic battery in 2007. Notably, Roper violated his probation in the 1998 burglary case and was still on parole in the 2007 intimidation case when he committed the instant offenses.

Roper concedes that his "fairly lengthy" criminal history involving "serious offenses" "reflect[s] poorly on his character." Appellant's Br. p. 6. Nevertheless, he argues that his remorse and desire to change his behavior render his twenty-year sentence inappropriate. He highlights that for a few months in 2007, he had a job and attended church regularly. During this same time, Roper said that he volunteered at a youth program "trying to keep them on the right path." Tr. p. 421.

Roper, however, has had numerous opportunities to reform his behavior, including a fully executed sentence for the 2004 dealing in cocaine conviction, substance-abuse treatment, and the benefit of both probation and parole. But each and every time he returned to a life of drugs and crime. Despite testimony that Roper was "dependable" and "good with kids for a period of 3 months," the trial court aptly observed, "that's gee wiz a pretty short period of time." *Id.* at 445. In addition, the PSI shows that despite Roper's short-term efforts to keep children on the right path, he was several thousand dollars behind in child support for his own children. Appellant's Confidential App. p. 10. In response to Roper's desire to reform himself, the trial court found that it was nothing more than "just" "words," especially in light of his extensive criminal history and family support that had yet to deter him from a life of drugs and crime. Tr. p. 446, 447. Given Roper's character, he has failed to persuade us that his aggregate sentence of twenty

years for two counts of Class B felony dealing in cocaine is inappropriate. We therefore affirm the trial court.

Affirmed.

CRONE, J., and BRADFORD, J., concur.