**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



APPELLANT PRO SE:

**DARNELL C. MILLER, SR.**
Pendleton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DARNELL C. MILLER, SR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A05-1110-PC-703 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Wendy W. Davis, Judge
Cause No. 02D04-1008-PC-62

**December 10, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Darnell C. Miller, Sr., pro se, appeals the post-conviction court's denial of his petition for post-conviction relief. He contends that the post-conviction court erred in denying his request for an evidentiary hearing and in holding that he did not receive ineffective assistance of trial and appellate counsel. Finding that Miller was not entitled to an evidentiary hearing and that he did not receive ineffective assistance of either trial or appellate counsel, we affirm.

**Facts and Procedural History**

The facts underlying Miller's convictions were adopted from this Court's memorandum decision on direct appeal:

> Kimberly Seiss ("Detective Seiss"), an undercover narcotics detective with the Fort Wayne Police Department, was working with Confidential Informant #1345 ("CI") to purchase narcotics in controlled transactions. The CI knew Miller sold narcotics and agreed to assist Detective Seiss by arranging narcotics purchases from him.
>
> On February 21, 2006, Detective Seiss, through her CI, purchased marijuana, which she referred to as "weed," from Miller. The CI arranged a transaction at Pontiac Mall, where Miller was working as a barber. Miller came out of the mall with a bag and met the CI. Then, both men entered Detective Seiss' undercover vehicle. Miller produced a bag of marijuana, Miller and the CI discussed the "good" quality of the drug, and Detective Seiss purchased the marijuana for $350.00. The CI discussed purchasing more marijuana from Miller in their next encounter. Also, Miller asked if Detective Seiss had a friend to whom she could introduce him.
>
> One week later, on February 28, 2006, the CI facilitated another purchase of narcotics from Miller at Pontiac Mall, and this time $600.00 was exchanged for one-half pound of marijuana. Detective Seiss asked Miller if he could obtain some ecstasy, which she referred to as "X." Miller said he could get it. Again, Miller inquired about Detective Seiss' friend and indicated that he wanted to meet her.

The CI arranged for a third purchase of narcotics from Miller on March 3, 2006. Detective Teresa Smith ("Detective Smith") portrayed the female "friend" that Miller wanted to meet and accompanied Detective Seiss and the CI to the mall. Miller arrived in a GMC Jimmy driven by another individual and went into the mall. The CI followed Miller into the mall. Subsequently, the CI left the mall and entered the undercover vehicle. Shortly thereafter, Miller came out of the mall and entered the undercover vehicle. Miller then produced two plastic baggies containing ecstasy that he referred to as "the sex kind." The detectives paid Miller $600.00 for the pills, discussed purchasing more marijuana, and asked if they could get a better price on the ecstasy next time. Miller told Detective Seiss that she could get a better price at their next transaction. Moreover, Miller also said yes when Detective Smith asked if she could get a "jar" of ecstasy next time.

On March 8, 2006, Detective Seiss and the CI made arrangements to purchase a "jar" of ecstasy. Detective Seiss, Detective Smith, and the CI again waited for Miller in the mall parking lot. The CI went into the mall two or three times to locate Miller, but he was busy cutting hair. Subsequently, Miller arrived in an Impala, driven by the same individual from the March 3rd buy. Miller exited the car, went into the trunk of the Impala, and obtained a white plastic grocery bag. Miller then met the CI outside the mall in plain view of Detective Seiss and Detective Smith. Immediately following, both men went directly to and entered the undercover vehicle.

Miller only had nine ecstasy pills in the bag and apologized for not having the 100 that the detectives had ordered. Additionally, Miller had one-half pound of marijuana but asked the detectives to come back later to make the marijuana purchase because the drug was not properly "broken down and weighed" yet. Consequently, Detective Smith purchased the nine ecstasy pills for a total of $220.00. After the purchase, Miller exited Detective Seiss' undercover vehicle and was arrested.

The State charged Miller with two counts of Class A felony dealing in a schedule I, II, or III controlled substance; one count of Class D felony possession of marijuana; and two counts of dealing in marijuana. At his jury trial, Miller testified that he was a marijuana dealer; however, he denied being a pill dealer. *Id*. at 352. Additionally, Miller testified that the CI supplied him with the ecstasy pills that he sold to the detectives. *Id*. at 368. Following trial, Miller was found guilty as charged on all counts. The trial court imposed a sentence of thirty years each on Counts I and III (the controlled substance counts); one and one-half years on Count II; four years

3

on Count IV; and four years on Count V. The trial court ordered the sentences to be served concurrently. Miller now appeals.

*Miller v. State*, No. 02A03-0611-CR-523 (Ind. Ct. App. Sept. 4, 2007) (citations and footnotes omitted), *trans. denied*. On appeal, Miller argued that the State had failed to rebut his argument that he was not predisposed to commit the crime and therefore disprove his entrapment defense. This Court affirmed, and the Supreme Court denied transfer. *Id.*

Miller then filed a post-conviction relief petition, alleging ineffective assistance of both trial counsel and appellate counsel, and abuse of discretion of the trial court. Appellant's App. p. 38, 51. Miller argued that his trial counsel was ineffective for not arguing an entrapment defense for being within 1000 feet of an elementary school while at Pontiac Mall, not tendering a jury instruction about entrapment, and withholding information during trial. *Id.* at 38-45. Specifically, Miller noted that his trial counsel witnessed communication between Juror 9 and one of the State's witnesses and never informed him of the exchange. *Id.* at 45. Miller also argued that his appellate counsel was ineffective for not raising a fundamental error claim on appeal in regards to Juror 15. *Id.* at 51. Juror 15 received a summons in the mail but had not filled out the juror questionnaire when he was seated in the jury, in violation of Indiana Jury Rule 5. Both parties were aware of this during voir dire and neither objected, and Miller's appellate counsel did not raise this issue on appeal. Finally, Miller argued that the trial court abused its discretion by not conducting a hearing about the communication between Juror 9 and a State's witness to assess potential bias.

4

The post-conviction court denied Miller's petition for post-conviction relief. Miller now appeals.

**Discussion and Decision**

The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* The post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.* We accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.*

**I. Evidentiary Hearing**

Miller first contends that the post-conviction court erred in denying his request for a hearing. We disagree. Indiana Post-Conviction Rule 1(5) governs post-conviction hearings and provides in relevant part:

> The petition shall be heard without a jury . . . . The court may receive affidavits, depositions, oral testimony, or other evidence and may at its discretion order the applicant brought before it for the hearing. The

5

petitioner has the burden of establishing his grounds for relief by a preponderance of the evidence.

Additionally, Indiana Post-Conviction Rule 1(9) provides further guidance on the matter, and states:

> In the event petitioner elects to proceed pro se, the court at its discretion may order the cause submitted upon affidavit. It need not order the personal presence of the petitioner unless his presence is required for a full and fair determination of the issues raised at an evidentiary hearing.

Therefore, if a petitioner proceeds pro se, as Miller did, the trial court may decide that the cause should be submitted by affidavit, and "it is the court's prerogative to determine whether an evidentiary hearing is required, along with the petitioner's personal presence, to achieve a 'full and fair' determination of the issues raised[.]" *Smith v. State*, 822 N.E.2d 193, 201 (Ind. Ct. App. 2005) (citing Ind. Post-Conviction Rule 1(9)(b)), *trans. denied*.

In this case, the trial court determined that a full and fair determination of the issues could be made from affidavits alone, and a hearing was not required. Under Post-Conviction Rule 1(9), this is within the trial court's discretion. Miller argues that our decision in *Kuhn v. State*, 901 N.E.2d 10 (Ind. Ct. App. 2009), requires that he be allowed a hearing, but we disagree. In *Kuhn*, the trial court set three different hearings for Kuhn's petition for post-conviction relief, but Kuhn failed to appear at all of them. *Id.* at 12. On the third hearing date, the trial court conducted the hearing in Kuhn's absence, which we found to be in error. *Id.* at 13. However, we specifically noted in *Kuhn* that the State asserted, "[n]or is there any indication that the trial court chose to allow [Kuhn] to proceed by affidavit, deciding his personal presence at the hearing was unnecessary." *Id.*

6

at 13 n.2.  Therefore, the holding in *Kuhn* does not apply to cases like the present one where the trial court has decided that the case should be submitted by affidavit; Miller's reliance on *Kuhn* is in error, and an evidentiary hearing was not required in this case.

We hold that the post-conviction court did not err in denying Miller's request for an evidentiary hearing.  Post-Conviction Rule 1(9) specifically allows this if a petitioner proceeds pro se, as was the case here.

## II. Ineffective Assistance

Miller also contends that the post-conviction court erred in finding that he received effective assistance of counsel at both the trial and appellate level.  We disagree.  To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Failure to satisfy either prong will cause the claim to fail.  *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002).  Counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms.  *Id.*  Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference.  *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001).  A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.*  To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different.  *Id.*  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001).

*A. Trial Counsel*

Miller argues that his trial counsel was ineffective in three ways: (1) he failed to investigate whether Miller had a statutory defense available to him under Indiana Code section 35-48-4-16(c); (2) he failed to tender a jury instruction based on that statutory defense; and (3) he withheld information from Miller about a communication between a juror and one of the State's witnesses.  We disagree.

1. Statutory Defense

Miller contends that he had a statutory defense to his conviction for dealing in a controlled substance available to him under Indiana Code section 35-48-4-16(c), which states:

> It is a defense for a person charged under this chapter with an offense that contains an element listed in subsection (a) that a person was in, on, or within one thousand (1,000) feet of school property, a public park, a family housing complex, or a youth program center at the request or suggestion of a law enforcement officer or an agent of a law enforcement officer.

However, the post-conviction court found that there was no evidence in the record that the police or the confidential informant induced Miller to choose a location within 1000 feet of a school.  *See* Appellant's App. p. 24-25.  Specifically, the post-conviction court found that the evidence

> establishes that the reason why the transactions occurred at that location was because Mr. Miller, who was employed at that location, confirmed that he was ready and willing to sell drugs at that location, without any regard to any known request or suggestion by the [confidential informant] or the police that the transactions should take place there rather than somewhere else.

*Id.* at 21.

However, Miller argues that it would not be unreasonable for a jury to find that he was summoned to the mall, within 1000 feet of a school, at the direction of the police. He also argues that our holding in *Bell v. State*, 881 N.E.2d 1080, 1086 (Ind. Ct. App. 2008), *trans. denied*, is applicable to this case. *Bell* holds that an entrapment defense is available when a defendant is directed to a location within 1000 feet of a school, public park, family housing complex, or youth program center "at the behest of the police." *Id.* But, because there was no "known request or suggestion" by the police that the drug transactions take place at Miller's place of employment, the holding in *Bell* does not apply here. Additionally, Miller has provided no argument that contradicts the post-conviction court's finding about a lack of such evidence. Therefore, his argument that it would not be unreasonable for a jury to find that he was summoned to the mall at the direction of the police is without merit.

The post-conviction court also did not err in finding that Miller's trial counsel was not ineffective for failing to investigate a statutory defense under Indiana Code section 35-48-4-16(c). In reviewing a court's decision to give or refuse a tendered jury instruction, we consider "(1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given." *Gracia v. State*, 976 N.E.2d 85, 90 (Ind. Ct. App. 2012). Since there is no evidence in the record to support the giving of the instruction, the post-conviction court did not err in

finding that Miller's trial counsel was also not ineffective for failing to tender a jury instruction based on that statutory defense.

## 2. Juror Communication

Miller also argues that his trial counsel was ineffective for "withholding information about communication between a witness and a juror." Appellant's Br. p. 12. The record shows that Miller's trial counsel was aware of communication between Juror 9 and one of the State's witnesses in which they "exchanged hellos, basically." *Id.* at 23. Trial counsel determined that this exchange would not have an effect on Juror 9's impartiality and therefore did not make an issue of the communication. Miller contends that this was ineffective assistance. We disagree.

There is a strong presumption that counsel gave adequate assistance and exercised reasonable professional judgment in making all significant decisions. *Timberlake*, 753 N.E.2d at 603. Additionally, we afford counsel substantial discretion in choosing strategy and tactics, and we will accord deference to those decisions. *Id.* Deciding not to make an issue of the communication between Juror 9 and the State's witness was a strategic decision made by Miller's counsel, and Miller has provided nothing in the record to suggest that this was unreasonable. We must defer to the judgment of Miller's counsel and therefore hold that the post-conviction court did not err in finding that Miller's counsel was not ineffective for withholding information about this exchange.

### *B. Appellate Counsel*

Finally, Miller contends that his appellate counsel was ineffective in two ways: (1) he failed to raise an argument that the trial court abused its discretion in failing to hold a

hearing to analyze potential bias resulting from the communication between the juror and the State's witness, and (2) he failed to argue fundamental error for the trial court's failure to disqualify a juror who did not fill out a juror questionnaire. We disagree.

The standard of review for a claim of ineffective assistance of appellate counsel is the same as for trial counsel. *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006). There are three ways in which appellate counsel may be considered ineffective: (1) when counsel's actions deny the defendant his right of appeal; (2) when counsel fails to raise issues that should have been raised on appeal; and (3) when counsel fails to present claims adequately and effectively such that the defendant is in essentially the same position after appeal as he would be had counsel waived the issue. *Grinstead v. State*, 845 N.E.2d 1027, 1037 (Ind. 2006). The decision of what issues to raise on appeal is one of the most important strategic decisions made by appellate counsel. *Bieghler v. State*, 690 N.E.2d 188, 193 (Ind. 1997). Thus, we give considerable deference to appellate counsel's strategic decisions and will not find deficient performance in appellate counsel's choice of some issues over others when the choice was reasonable in light of the facts of the case and the precedent available to counsel at the time the decision was made. *Taylor v. State*, 717 N.E.2d 90, 94 (Ind. 1999). To establish deficient performance for failing to raise an issue, the petitioner must show that the unraised issue was "clearly stronger" than the issues that were raised. *Bieghler*, 690 N.E.2d at 194.

### 1. Juror Communication

Miller first argues that his appellate counsel was ineffective for failing to argue on appeal that the trial court abused its discretion by not holding a hearing to determine any

potential bias that resulted from the communication between Juror 9 and the State's witness. Miller contends that *Remmer v. United States*, 347 U.S. 277 (1954), mandates such a hearing, but we find that argument to be unpersuasive. In *Remmer*, the Supreme Court held that such a hearing is required when the communications are made about a matter pending before the jury "if not made in pursuance of known rules of the court and the instructions and direction of the court made during the trial, with full knowledge of the parties." *Id.* at 229. However, in the present case, the content of the communication was solely an exchange of "hellos," Appellant's Br. p. 23, not a matter pending before the jury. Additionally, Miller's counsel was aware of the content of the communication and determined that it was not prejudicial to his client. The communication was therefore not the type contemplated by *Remmer*, so its holding does not apply.

The post-conviction court did not err in this regard.

### 2. Juror Disqualification

Finally, Miller argues that his appellate counsel was ineffective for failing to challenge the selection of Juror 15 as fundamental error.

The fundamental-error doctrine is an exception to the general rule that the failure to object at trial constitutes a procedural default precluding consideration of the issue on appeal. *Jewell v. State*, 887 N.E.2d 939, 940 n.1 (Ind. 2008). The fundamental error exception is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006). The error claimed must either make a fair trial impossible

12

or constitute clearly blatant violations of basic and elementary principles of due process. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010), *reh'g denied.* This exception is available only in egregious circumstances. *Id.*

In this case, Juror 15 did not fill out a juror questionnaire as required by Indiana Jury Rule 5. However, Juror 15 received a summons in the mail, neither side objected to his service on the jury, and both sides had the opportunity to ask any relevant questions of Juror 15 during voir dire. Appellant's App. p. 23. Based on these facts, we cannot say that this amounts to an egregious circumstance in which the fundamental-error doctrine is applicable. We therefore hold that the post-conviction court did not err in finding Miller's appellate counsel was not ineffective for failing to challenge the selection of Juror 15 as fundamental error.

Affirmed.

BAILEY, J., and BROWN, J., concur.