## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 24 2019, 10:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven E. Ripstra
Jasper, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jason McMickle,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 24, 2019<br><br>Court of Appeals Case No.<br>19A-CR-676<br><br>Appeal from the Pike Circuit Court<br><br>The Honorable Jeffrey L. Biesterveld, Judge<br><br>Trial Court Cause No.<br>63C01-1803-F4-172 |

**Tavitas, Judge.**

# Case Summary

Jason McMickle appeals his conviction for dealing in methamphetamine, a Level 4 felony. We affirm.

# Issues

McMickle raises two issues, which we restate as:

    I.    Whether the trial court properly admitted the methamphetamine into evidence at trial.

    II.    Whether the trial court properly allowed testimony by an officer regarding fingerprinting and DNA evidence.

# Facts

On March 10, 2018, Corporal Jared Simmons of the Petersburg Police Department was informed by a confidential informant ("CI") that the CI could purchase methamphetamine that evening from Jason Atkins. The CI faced a pending petition to revoke probation, and, as a result of her cooperation, the petition to revoke probation was withdrawn. A controlled buy was arranged, and Corporal Simmons met with the CI at a little league field to search her and give her the buy money. Corporal Simmons searched the CI's pockets and had the CI "shake . . . out" her bra with two hands. Tr. Vol. II p. 48. Corporal Simmons did not "go towards the crotch area" due to privacy issues. *Id.* The CI, however, was wearing tight "jeggings," and Corporal Simmons was "confident" that the CI did not have drugs on her person. *Id.*

[4]    Corporal Simmons gave the CI $200.00 in twenty-dollar bills to purchase two grams of methamphetamine. Corporal Simmons also gave the CI a key fob recording device. Several other officers, including Sergeant Dallas Killian with the Pike County Sheriff's Department, were nearby during the transaction to provide surveillance. Sergeant Killian was observing from a nearby parking lot with binoculars. A white van arrived with Atkins in the passenger seat and McMickle driving. The CI got into the van. Corporal Simmons was able to see the CI's outline, and Sergeant Killian was able to clearly observe the CI while she was waiting on the white van, as she entered the van, and after she got out of the van. After a few minutes, the CI exited the van and gave the signal that the transaction was complete.

[5]    The officers stopped the white van and arrested Atkins and McMickle. McMickle had $100.00 of the buy money in his hand, and Atkins had the other $100.00 of the buy money in his jacket pocket. Two "corner baggies" containing a substance were recovered from the CI's hand. *Id.* at 62. Corporal Simmons weighed the substance with "a standard set of digital scales," which were not calibrated and indicated a weight of 1.9 grams. *Id.* at 90. Corporal Simmons field tested the substance, put it in packaging, sealed the packaging, and logged it into evidence at the police department. After the controlled buy, Corporal Simmons discovered that the key fob recording device failed to record due to human error. The laboratory later identified the substance as 1.51 grams of methamphetamine.

[6]     The State charged McMickle with dealing in methamphetamine, a Level 4 felony, and McMickle's jury trial was held in December 2018. The CI did not testify because she died in September 2018 as a result of complications of childbirth. During the first day of the State's case-in-chief, Corporal Simmons and Sergeant Killian testified. On the second day of the State's case-in-chief, the State recalled Corporal Simmons. Part of Corporal Simmons' testimony on the second day pertained to fingerprinting and DNA testing and inaccurate expectations caused by television programs that depict such forensic testing. McMickle objected, and the trial court overruled the objection. McMickle also objected to the admission of the methamphetamine on chain of custody grounds; the trial court, however, overruled the objection.

[7]     Atkins also testified during the State's case-in-chief that the CI asked to buy two grams of methamphetamine, but Atkins did not have the requisite amount of methamphetamine available. Atkins obtained half of the requested methamphetamine from McMickle, and Atkins then sold the methamphetamine to the CI and gave half of the money to McMickle.

[8]     The jury found McMickle guilty of dealing in methamphetamine, a Level 4 felony. The trial court sentenced McMickle to ten years in the Department of

Correction. McMickle then filed a motion to correct error, which the trial court denied.[1] McMickle now appeals.

## Analysis

### I. Admission of Methamphetamine

McMickle first challenges the admissibility of the methamphetamine based on chain of custody grounds. In reviewing the admission or exclusion of evidence, we determine whether the trial court abused its discretion. *McCallister v. State*, 91 N.E.3d 554, 561 (Ind. 2018). We will reverse only if the trial court's ruling was clearly against the logic and effect of the facts and circumstances before it. *Id.*

An exhibit is admissible "if the evidence regarding its chain of custody strongly suggests the exact whereabouts of the evidence at all times." *Culver v. State*, 727 N.E.2d 1062, 1067 (Ind. 2000). The State must give "reasonable assurances that the property passed through various hands in an undisturbed condition."

---

[1] The State argues that McMickle's appeal was not timely filed because his motion to correct error was filed one day late. McMickle contends that his motion to correct error was timely filed by certified mail but that the CCS does not reflect the correct filing date. We direct McMickle's attention to Indiana Appellate Rule 32, which provides a procedure for correcting the Clerk's Record. Regardless, we decline to dismiss this appeal based on *McKnight v. State*, 1 N.E.3d 193 (Ind. Ct. App. 2013). There, we dismissed an appeal due to an untimely motion to correct error. Our Supreme Court, however, granted transfer and vacated our opinion. "In its order declaring that our appellate jurisdiction has, in fact, been invoked, our supreme court stated that the timeliness of the motion to correct error had not been raised prior to the State's appellee's brief." *McKnight*, 1 N.E.3d at 199 n.2. As such, we addressed the defendant's arguments on appeal. Similarly, here, the State failed to raise the timeliness of the motion to correct error until it filed its appellee's brief. Based on *McKnight*, we will address McMickle's arguments.

*Id.* "[T]he State need not establish a perfect chain of custody whereby any gaps go to the weight of the evidence and not to admissibility." *Id.* There is a presumption of regularity in the handling of exhibits by public officers. *Id.* Merely raising the possibility of tampering is insufficient to make a successful challenge to the chain of custody. *Bell v. State*, 881 N.E.2d 1080, 1084 (Ind. Ct. App. 2008), *trans. denied*.

[11] At the trial, McMickle objected to the admission of the methamphetamine because the CI was unavailable to testify regarding the chain of custody.[2] On appeal, McMickle argues that the State failed to establish a proper chain of custody for the methamphetamine because: (1) the officers failed to completely search the CI prior to the controlled buy; (2) the officers lost visual contact with the CI when she was in the van with McMickle and Atkins; (3) the CI was unable to testify regarding the chain of custody due to her death; (4) the weight of the methamphetamine was different when the officer weighed it versus when the laboratory weighed it; and (5) the key fob device did not record the CI's interaction with McMickle and Atkins.

[12] The State properly notes that McMickle's "true argument is that the absence of [the CI's] testimony results in a break [in the chain of custody] between

---

[2] The State argues that McMickle waived this issue by failing to object; however, we conclude that McMickle objected and preserved the issue.

Defendant and [the CI] rather than any law enforcement official."[3] Appellee's Br. p. 17. The State points out that the purpose of the chain of custody rule is to "ensure that during the time the evidence is in the *possession of the law enforcement authorities*, there is not a substitution or alteration of the evidence." *Morse v. State*, 593 N.E.2d 194, 197 (Ind. 1992).

[13] We have held that "[a] properly conducted controlled buy will permit an inference the defendant had prior possession of a controlled substance." *Watson v. State*, 839 N.E.2d 1291, 1293 (Ind. Ct. App. 2005). McMickle relies on *Watson*, 839 N.E.2d at 1293, which held: "Because the CI was not searched prior to the buy and the CI did not testify about receiving the cocaine from Watson, we must agree with Watson that no reasonable fact-finder, based on this evidence alone, could have found beyond a reasonable doubt he originally possessed the cocaine found on the CI after the buy."

[14] *Watson* is distinguishable from this case. Here, the police searched the CI prior to the controlled buy. Corporal Simmons searched the CI's pockets and had the CI "shake . . . out" her bra with two hands. Tr. Vol. II p. 48. Corporal Simmons did not "go towards the crotch area" due to privacy issues. *Id.* The CI, however, was wearing tight "jeggings," and Corporal Simmons was "confident" that the CI did not have drugs on her person. *Id.* Officers then

---

[3] The State contends that McMickle's argument is more of a sufficiency of the evidence argument, but McMickle specifically states that he is not making a sufficiency of the evidence argument. *See* Appellant's Br. p. 14.

observed the CI as she waited for Atkins and McMickle, as she entered the van, and as she exited the van and walked away.

[15] McMickle also implies that the chain of custody fails because the weight of the substance differed when the officer weighed it at the scene and when the laboratory later weighed it. Corporal Simmons weighed the substance with "a standard set of digital scales" and found a weight of 1.9 grams. *Id.* at 90. The scales, however, were not calibrated. Corporal Simmons then field tested the substance, put it in packaging, sealed the packaging, and logged it into evidence at the police department. The laboratory identified the substance as 1.51 grams of methamphetamine. Although Corporal Simmons was not using calibrated scales to weigh the substance, the laboratory's scales were calibrated. Any difference goes to the weight of the evidence, not its admissibility.

[16] Finally, the CI was in the van with McMickle and Atkins for only a couple of minutes, and except for her time in the van, she was continuously observed between the time of the search and the time the methamphetamine was removed from her hand. At the time of their arrests, McMickle and Atkins possessed the buy money, and Atkins testified at the trial that he and McMickle sold methamphetamine to the CI. Although a recording of the transaction would have been preferable here, especially since the CI was unable to testify in this case, the lack of a recording is not fatal to the State's case.

[17] The State presented evidence regarding the methamphetamine's chain of custody that strongly suggests the exact whereabouts of the evidence at all

times. Each of McMickle's arguments merely goes to the weight of the evidence, not its admissibility. His implication of the possibility of tampering is insufficient to challenge the chain of custody of the methamphetamine. The trial court properly admitted the methamphetamine.

## II. Corporal Simmons's Testimony

[18] Next, McMickle argues that the trial court abused its discretion by allowing Corporal Simmons to testify a second time during its case-in-chief. In reviewing the admission or exclusion of evidence, we determine whether the trial court abused its discretion. *McCallister*, 91 N.E.3d at 561. We will reverse only if the trial court's ruling was clearly against the logic and effect of the facts and circumstances before it. *Id.*

[19] On appeal, McMickle argues that the trial court abused its discretion by allowing the State to recall Corporal Simmons on the second day of its case-in-chief. McMickle, however, did not object during the trial on these grounds, and accordingly, the argument is waived. *See Treadway v. State*, 924 N.E.2d 621, 631 (Ind. 2010) (Generally speaking, "[a] party may not add to or change his grounds for objections in the reviewing court. . . . Any ground not raised at trial is not available on appeal.") (internal citations omitted).

[20] McMickle also contends that Corporal Simmons was not qualified as an expert witness and that Corporal Simmons speculated on the impact of fingerprinting and DNA evidence in Pike County cases. During McMickle's opening statement, McMickle noted that no fingerprints or DNA connected McMickle

to the methamphetamine. During McMickle's cross-examination of Corporal Simmons on the first day of the trial, McMickle questioned Corporal Simmons regarding the lack of fingerprint or DNA testing on the baggies that contained the methamphetamine. Our Supreme Court has held that, "when a party raises a subject on cross-examination, it is permissible for the opposing party to pursue that subject on re-direct examination." *Meagher v. State*, 726 N.E.2d 260, 266 (Ind. 2000). McMickle opened the door by raising the issues on cross-examination, and therefore, we cannot say the trial court abused its discretion by allowing the State to address the issues during Corporal Simmons's testimony on the second day of the trial.

[21] Even if the trial court abused its discretion by allowing the testimony, any error was harmless. An error is harmless when it results in no prejudice to the substantial rights of a party. *Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018); Ind. Trial Rule 61. "When a conviction is supported by substantial evidence of guilt sufficient to satisfy this Court that there is no substantial likelihood that the questioned evidence contributed to the conviction, the error is harmless." *Weedman v. State*, 21 N.E.3d 873, 890 (Ind. Ct. App. 2014), *trans. denied*. Immediately following the controlled buy, $100.00 of the buy money was recovered from McMickle's hand and the remaining $100.00 of the buy money was recovered from Atkins's pocket. Two baggies of methamphetamine were recovered from the CI's hand. Atkins testified at the trial that the CI asked to buy two grams of methamphetamine, but that Atkins did not have enough methamphetamine available. Atkins obtained half of the requested

methamphetamine from McMickle. Atkins then gave the methamphetamine to the CI and gave half of the money to McMickle. Given the overwhelming evidence, any error in the trial court's admission of Corporal Simmons's testimony was harmless.

## Conclusion

[22] The trial court did not abuse its discretion by admitting the methamphetamine or by admitting Corporal Simmons's testimony. Even if the trial court erred by admitting Corporal Simmons's testimony, any error was harmless. We affirm.

[23] Affirmed.

Brown, J., and Altice, J., concur.