Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**BRUCE W. GRAHAM**
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Jun 21 2012, 9:11 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEFFERY ROSHELL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A04-1108-CR-430 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Randy J. Williams, Judge
Cause No. 79D01-1004-FA-13

**June 21, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Jeffery Roshell ("Roshell") was convicted after a jury trial of two counts of dealing in cocaine,[1] each as a Class A felony, and was sentenced to forty years on each count to run concurrently with each other. Thirty years of his sentence were ordered executed, with the last five of that time to be served in community corrections, and ten years suspended to probation. Roshell appeals, raising the following restated issues:

I. Whether Roshell's waiver of counsel was knowing and intelligent;

II. Whether sufficient evidence was presented to support Roshell's Class A felony convictions for dealing in cocaine;

III. Whether Roshell was entitled to discharge under Indiana Criminal Rule 4(B)(1); and

IV. Whether Roshell's sentence was inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

**FACTS AND PRODECURAL HISTORY**

At some point prior to April 7, 2010, Detective Natalie Lovett ("Detective Lovett"), who worked in the Lafayette Police Department's Street Crimes Unit, received Roshell's name and phone number as a potential source of crack cocaine. On April 7, 2010, around 8:30 or 9:00 p.m., Detective Lovett, while working undercover, called Roshell to attempt to arrange a purchase of crack cocaine from him. Roshell denied knowledge of what Detective Lovett was talking about, said he did not know her, and hung up on her. Two or three hours later, Roshell called Detective Lovett's phone and spoke with another detective who answered the phone. Roshell left a message with the

---

[1] *See* Ind. Code § 35-48-4-1.

2

detective to tell Detective Lovett he had called. Detective Lovett called Roshell back at 12:40 a.m. on April 8, 2010, and Roshell asked her if she was still interested in purchasing $100 worth of crack cocaine; a deal was arranged.

Detective Lovett fitted herself with a body wire and was given $100 in prerecorded buy money. She drove toward the prearranged meeting location. On the way there, she received a call from her surveillance team that there were marked patrol cars in the area of the prearranged location. Around the same time, Roshell also called her and told her to meet at a different location. Detective Lovett met Roshell in the 400 block of 4th Street near the intersection of 4th Street and Romig Street in Lafayette, Indiana. Detective Lovett gave Roshell $100 and received from him .69 grams of crack cocaine, which was packaged in two corner baggies. Located within 1,000 feet of the location where the drug transaction occurred were South Tip Park, the Community and Family Resource Center ("CFRC"), and an apartment building at 425 Romig Street. There were children who lived in the apartment building, and eleven children who lived within the 1,000-foot radius who had visited the CFRC on that date.

Roshell tried to call Detective Lovett three times on April 8 after the first transaction -- at 1:48 a.m., 1:50 a.m., and again at 8:26 p.m. Detective Lovett called Roshell the following day, on April 9, 2010, at 6:27 p.m. She left a message, and Roshell called her back. He told her he was "all good," which Detective Lovett took to mean that he had crack cocaine for her. *Tr*. at 112. She again fitted herself with a body wire and drove to 9th Street, where she had been instructed to call Roshell. Roshell told her to meet him at the intersection of 14th Street and Ferry. Detective Lovett realized that there

3

was no such intersection and called Roshell back. She told him she was at the intersection of 13th Street and Cincinnati. Roshell told her to stay there, and he met her at that location, asking that she follow him to another location. They drove to an alley where Detective Lovett exchanged $100 for two more corner baggies that contained .48 grams of crack cocaine. Located within 1,000 feet of the transaction were the St. James Lutheran School, Washington Elementary School, New Community School, Historic Jeff Centre Senior Apartments, and 4-C Properties. There were five children who lived at 4-C Properties at 804 Union Street and one child who lived in the Historic Jeff Centre Senior Apartments. There were two children who lived within the 1,000-foot zone who attended St. James Lutheran School and four children who attended New Community School.

Later, on April 9, 2010, Detective Lovett set up a third purchase from Roshell, and he told her to meet him near 9th Street and Hartford. When Roshell arrived for the transaction, Detective Lovett identified him, and marked patrol units arrested Roshell. He was not found with any drugs or money on his person when he was arrested. The State charged Roshell with two counts of dealing in cocaine, each as a Class A felony, and two counts of possession of cocaine, each as a Class B felony.

On May 10, 2010 the trial court appointed a public defender to represent Roshell. On August 5, 2010, while he was still represented by counsel, Roshell filed a pro se motion for speedy trial, which was denied the next day. On September 24, 2010, the trial court appointed a second public defender due to a conflict of interest. On January 12, 2011, Roshell, by counsel, filed a motion for discharge, which was denied after a hearing. On April 8, 2011, Roshell's counsel filed a motion to withdraw, which was granted, and

4

on April 25, 2011, a third attorney filed an appearance on Roshell's behalf. On June 3, 2011, this attorney filed a motion to withdraw, and a hearing was conducted on that motion and on Roshell's motion to represent himself. The trial court allowed Roshell's attorney to withdraw, but appointed him as standby counsel for purposes of trial.

A jury trial was held on July 12 and 13, 2011, at the conclusion of which the jury found Roshell guilty of two counts of Class A felony dealing in cocaine and two counts of Class B felony possession of cocaine. The trial court sentenced Roshell to forty years for each of his dealing in cocaine convictions, to be served concurrently with each other, with ten years suspended to probation and five years of the executed time to be served in community corrections. The possession convictions were merged into the dealing convictions due to double jeopardy concerns. Roshell now appeals.

## DISCUSSION AND DECISION

### I. Waiver of Counsel

Roshell argues that his Sixth Amendment right to counsel was violated when the trial court allowed him to proceed pro se during trial because he did not knowingly and intelligently waive his right to counsel. He contends that the trial court failed to adequately warn him of the risks of proceeding pro se and failed to ensure that he understood those risks. Roshell also claims that he was physically and mentally unable to make a knowing and intelligent waiver of his right to counsel because, at the time, he had recently suffered from a stroke, which caused him to "go and come a lot," *Tr.* at 20, and he had a limited educational background. He further asserts that evidence suggests that

5

he was extremely frustrated with the lack of progress in his case and that it appeared he was more interested in advancing his case, than in representing himself.

"In order to waive the constitutionally protected right to counsel, a defendant must knowingly and intelligently forgo those relinquished benefits provided by counsel, and be advised of the potential pitfalls surrounding self-representation so that it is clear that he knows what he is doing and [that] his choice is made with eyes open." *Kubsch v. State*, 866 N.E.2d 726, 736 (Ind. 2007) (internal quotation marks omitted) (quoting *Faretta v. California*, 422 U.S. 806, 835 (1975)), *cert. denied* 553 U.S. 1067 (2008). That is, the trial court must determine the defendant's competency to represent himself and establish a record of the waiver. *Bumbalough v. State,* 873 N.E.2d 1099, 1102 (Ind. Ct. App. 2007). "There are no magic words a judge must utter to ensure a defendant adequately appreciates the nature of the situation. *Kubsch*, 866 N.E.2d at 736. "Rather, determining if a defendant's waiver was "knowing and intelligent" depends on the 'particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused.'" *Id*. (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

We review de novo a trial court's finding that a defendant waived his right to counsel. *Cooper v. State*, 900 N.E.2d 64, 67 (Ind. Ct. App. 2009) (citing *Miller v. State,* 789 N.E.2d 32, 37 (Ind. Ct. App. 2003)). Our Supreme Court has recently adopted the following four factors to consider when reviewing the adequacy of a waiver: (1) the extent of the court's inquiry into the defendant's decision; (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages

6

of self-representation; (3) the background and experience of the defendant; and (4) the context of the defendant's decision to proceed pro se. *Kubsch*, 866 N.E.2d at 736.

Here, on June 17, 2011, the trial court conducted a hearing regarding Roshell's motion to proceed pro se and his attorney's motion to withdraw. At the hearing, the trial court made the following inquiry into Roshell's request to represent himself:

Q: Do you speak, read, write, and understand the English language fluently?

A: Yes.

Q: And how far did you go in school?

A: I went to the twelfth grade.

….

Q: Did you obtain your high school diploma?

A: Yes.

….

Q: Have you ever been treated for any mental or emotional problems or disabilities?

A: No, no.

Q: No. Are you now under the influence of any alcohol, drugs, controlled substances or medications that affect your ability to understand what we are doing today?

A: I, I, I have uh, I had a stroke and I go and come a lot.

Q: Okay, but do you understand what we're doing here today?

A: Yeah, I understand.

Q: Alright. Are you taking any medications?

7

A: Yes.

Q: And do you know what the medications are?
A: I don't know what it is.

Q: Is that for high blood pressure?

A: It's several, they're giving me several medications.

*Tr*. at 14-15. The trial court then asked Roshell a series of questions regarding whether he understood that, if he represented himself, he would be held to the same standards as a trained, experienced, and licensed attorney and that he would not receive any special treatment due to his legal inexperience. *Id*. at 16. This line of inquiry included detailed questions as to whether Roshell understood the different skills and expertise that an experienced attorney would possess that would benefit him in his defense. *Id*. at 16-18. The trial court then stated:

Q: You understand that it is almost always unwise or even foolish for anyone to act as his own legal counsel and to represent him or herself in legal proceedings, especially of this magnitude and seriousness?

A: Yes.

Q: Do you understand that even when experienced attorneys may happen to find themselves in legal troubles, they almost always hire another attorney to represent them and do not represent themselves?

A: Yes.

Q: Do you understand that it is my strong recommendation that you retain an attorney or accept the appointment of the Public Defender to represent you in this case?

*Id*. at 18-19.

8

Roshell then informed the trial court that his family was "talking about hiring an attorney . . . [b]ecause they feel I can't represent myself." *Id*. at 19. The trial court also discussed the results of a medical examination of Roshell done earlier in the week at the jail. The report stated that Roshell suffered from controlled high blood pressure and residual effects of a mild stroke that affected his facial musculature and left upper extremity strength. *Id*. at 19-20. It also stated that Roshell was cleared for participation in the upcoming court proceeding. *Id*. at 20. After this line of questioning, the trial court concluded that Roshell's responses were "satisfactory in his ability to understand the proceedings today, that he understands the value of being represented by an attorney[,] and . . . based upon all of his responses to all of the questions today, that he understands the . . . possible consequences of self-representation." *Id*. at 21. The trial court therefore granted Roshell's request to represent himself and granted his attorney's request to withdraw, but appointed the attorney to be standby counsel for Roshell. *Id*.

The trial court inquired into Roshell's educational background and determined that he could read, write, speak, and understand English and was a high school graduate who had earned a diploma. Roshell was asked about his recent stroke and whether, in light of the effects of that, he could understand the proceedings, to which he responded that he could. The trial court reviewed the results of the medical examination conducted on Roshell that reflected that he suffered from some mild physical effects of his stroke, but that he was "cleared for participation in the upcoming court proceeding." *Id*. at 20. The trial court also advised Roshell that self-representation was an unwise and "even foolish" decision, *id*. at 18, and the court's questioning pointed out the dangers and disadvantages

9

of self-representation. However, Roshell repeatedly reaffirmed his intention of proceeding pro se. Looking at all the facts and circumstances, we conclude that the trial court correctly determined that Roshell's waiver of counsel was knowing and intelligent.

## II. Sufficient Evidence

Our standard of review for sufficiency claims is well-settled. When we review a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Parahams v. State*, 908 N.E.2d 689, 691 (Ind. Ct. App. 2009) (citing *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind. 2003)). We look only to the probative evidence supporting the judgment and the reasonable inferences therein to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id.* If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Id.* It is the function of the trier of fact to resolve conflicts of testimony and to determine the weight of the evidence and the credibility of the witnesses. *Yowler v. State*, 894 N.E.2d 1000, 1002 (Ind. Ct. App. 2008).

Roshell argues that the State failed to present sufficient evidence to support his convictions for Class A felony dealing in cocaine because it failed to rebut the statutory defense under Indiana Code section 35-48-4-16(b) that he was only briefly near school property and there were no children present at the time of the offense. He contends that he properly placed this defense at issue during the trial, and the State failed to rebut it beyond a reasonable doubt as they were required to do. Roshell asserts that the State did

10

not prove that there were children actually in the 1,000-foot area of each delivery at the time of the offense.

"When reviewing a defense, we apply the same standard of review as that applied to other challenges to the sufficiency of the evidence." *Bell v. State*, 881 N.E.2d 1080, 1085 (Ind. Ct. App. 2008), *trans. denied*. Therefore, we do not reweigh the evidence or judge the credibility of the witnesses and consider only the evidence supporting the verdict and the reasonable inferences that may be drawn therefrom. *Id.* at 1085-86.

Indiana Code section 35-48-4-16 states in relevant part:

> (a)  For an offense under this chapter that requires proof of:
>
> > (1)  delivery of . . . a controlled substance;
>
> . . . .
>
> within one thousand (1,000) feet of school property, a public park, a family housing complex, or a youth program center the person charged may assert the defense in subsection (b) or (c).
>
> (b)  It is a defense for a person charged under this chapter with an offense that contains an element listed in subsection (a) that:
>
> > (1)  a person was briefly in, on, or within one thousand (1,000) feet of school property, a public park, a family housing complex, or youth program center and;
> >
> > (2)  no person under eighteen (18) years of age at least three (3) years junior to the person *was in, on, or within* one thousand (1,000) feet of the school property, a public park, family housing complex, or youth program center at the time of the offense.

Ind. Code § 35-48-4-16 (emphasis added). The defenses under this section are defenses of justification, which "'admit that the facts of the crime occurred but contend that the

11

acts were justified.'" *Bell*, 881 N.E.2d at 1086 (quoting *Moon v. State*, 823 N.E.2d 710, 716 (Ind. Ct. App. 2005), *trans. denied*). "Indiana has allocated the burden as to these defenses in two steps." *Moon*, 823 N.E.2d at 716. The defendant must first produce evidence raising the defense. *Id*. Secondly, the State must negate at least one element of the defense beyond a reasonable doubt. *Id*.

In order to rebut the statutory defense beyond a reasonable doubt, under the first count of Class A felony dealing in cocaine, which was the controlled buy on April 8, 2010, the State was required to present evidence to disprove that no person under eighteen years of age at least three years junior to the defendant was in, on, or within 1,000 feet of a public park, South Tip Park; a family housing complex, apartments located at 5th and Romig Streets; and/or a youth program center, the CFRC. Under the second count of Class A felony dealing in cocaine, which was the controlled buy on April 9, 2010, the State was required to present evidence to disprove that no person under eighteen years of age at least three years junior to the defendant was in, on, or within 1,000 feet of school property, St. James School, Washington School and/or New Community School properties, and/or a family housing complex, apartments located at 905 Union Street, 4-C Properties, the Historic Jeff Centre Senior Apartments, and/or the Union Square Apartments.

With regard to the presence of children within 1,000 feet of the named locations during the controlled buy on April 8, 2010, the State presented evidence that there were children who lived in the apartment building at 425 Romig Street, and eleven children who lived within the 1,000-foot radius of the drug transaction who had visited the CFRC

12

on that date. *Tr*. at 222, 227. As to the presence of children within 1,000 feet of the named locations during the controlled buy on April 9, 2010, the State presented evidence that there were five children who lived in the apartments at 4-C Properties on that date. *Id*. at 228-30. Evidence was also presented that there were two children residing within the 1,000-foot area who attended St. James Lutheran School on that date. *Id*. at 232. The State also presented evidence that both of these transactions occurred late at night, which created a strong inference that at least some of the children who lived in these neighborhoods and apartment complexes were home and within the zone at the time of the offenses. This evidence was sufficient to rebut that no child *was in, on, or within 1,000 feet* of the school property, a public park, family housing complex, or youth program center at the time of the offenses. We therefore conclude that the State presented sufficient evidence to disprove the statutory defense, and sufficient evidence supported Roshell's convictions.

### III. Criminal Rule 4(B)

We review *de novo* a trial court's denial of a motion to discharge a defendant. *Kirby v. State,* 774 N.E.2d 523, 530 (Ind. Ct. App. 2002), *trans. denied.* The Sixth Amendment to the United States Constitution and Article 1, section 12 of the Indiana Constitution guarantee the right to a speedy trial. *Wilkins v. State*, 901 N.E.2d 535, 537 (Ind. Ct. App. 2009), *trans. denied*. The provisions of Indiana Criminal Rule 4 implement these protections. *Id.* Criminal Rule 4 provides, in pertinent part:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a

13

continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.

Ind. Crim. Rule 4(B)(1).

Roshell argues that the trial court erred in denying his motion for discharge because the State failed to bring him to trial within seventy days after he filed a motion for speedy trial pursuant to Indiana Criminal Rule 4(B). He contends that he properly filed a motion for speedy trial, but did not receive a trial within seventy days of the motion. He further claims that the evidence showed that he was not responsible for any delay or continuances within the period and that there was no evidence of congestion of the court calendar.

Once counsel is appointed, a defendant speaks to the trial court through counsel. *Underwood v. State*, 722 N.E.2d 828, 832 (Ind. 2000). A trial court is not required to respond to a defendant's pro se request or objection. *Id.* To require the trial court to respond to both the defendant and counsel would effectively create a hybrid representation to which a defendant is not entitled. *Id.*

Here, the trial court appointed the public defender to represent Roshell on May 10, 2010, and his counsel filed an appearance on May 18, 2010. *Appellant's App.* at 26. On August 5, 2010, Roshell filed his pro se motion for speedy trial. On August 6, 2010, the trial court denied Roshell's pro se motion because he was represented by counsel at the time. *Id.* at 25, 76. Therefore, Roshell was represented by counsel at the time that he filed his pro se motion for speedy trial, and the trial court did not err when it denied his

14

motion. Because the motion was not properly before the trial court, Roshell was not entitled to discharge under Criminal Rule 4(B).

## IV. Sentencing

Trial courts are required to enter sentencing statements whenever imposing sentence for a felony offense. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). The statement must include a reasonably detailed recitation of the trial court's reasons for imposing a particular sentence. *Id.* If the recitation includes a finding of aggravating or mitigating circumstances, then the statement must identify all significant mitigating and aggravating circumstances and explain why each circumstance has been determined to be mitigating or aggravating. *Id.* Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Id.* An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.*

One way a trial court can abuse its discretion is by including a finding of aggravating and mitigating factors that are not supported by the record. *Id.* at 490. A trial court may also abuse its discretion by entering a sentencing statement that omits mitigating factors that are clearly supported by the record and advanced for consideration. *Id.* at 490-91. Because the trial court no longer has any obligation to "weigh" aggravating and mitigating factors against each other when imposing a sentence, a trial court cannot now be said to have abused its discretion in failing to "properly weigh" such factors. *Id.* at 491. Once the trial court has entered a sentencing statement,

15

which may or may not include the existence of aggravating and mitigating factors, it may then "impose any sentence that is . . . authorized by statute; and . . . permissible under the Constitution of the State of Indiana." Ind. Code § 35-38-1-7.1(d).

Although Roshell states that he is arguing that his sentence was inappropriate, it actually appears that he is contending that the trial court abused its discretion in its finding of aggravating and mitigating factors. Specifically, Roshell argues that the trial court abused its discretion in finding that he was in need of correctional or rehabilitative treatment that can best be provided by his commitment to a penal facility to be an aggravating circumstance. He also seems to claim that it was an abuse of discretion to not find his work history, medical problems, drug addiction, and that the State initiated the request to purchase drugs as mitigating factors. Roshell further appears to allege that his military service should have been given more weight as a mitigating factor.

As a trial court no longer has any obligation to "weigh" aggravating and mitigating factors against each other when imposing a sentence, a trial court cannot now be said to have abused its discretion in failing to "properly weigh" such factors. *Anglemyer*, 868 N.E.2d at 491. Roshell's argument as to improper weight being given to his military service is not subject to review on appeal. As to his argument regarding other factors that were not found to be mitigating, Roshell did not present any evidence or advance any mitigating circumstances at sentencing. Therefore, the trial court did not abuse its discretion as it did not omit any mitigating factors that were clearly supported by the record and advanced for consideration. *Id*. at 490-91.

16

To enhance a defendant's sentence based upon the aggravating factor that a defendant is in need of correctional or rehabilitative treatment that can best be provided by his commitment to a penal facility, the trial court must provide a specific or individualized statement of the reason why this defendant was in need of correctional or rehabilitative treatment that could best be provided by a period of incarceration in a penal facility in excess of the presumptive sentence. *Sensback v. State*, 720 N.E.2d 1160, 1165 (Ind. 1999). The statement cannot be simply a "perfunctory recitation" of the statutory wording. *Id.* The trial court must provide a reasoned statement why this defendant is in need of this kind of treatment for a period longer than the presumptive sentence. *Id.* Here, the trial court stated, after discussing Roshell's lengthy criminal history, including four petitions to revoke probation, that it was finding that Roshell was "in need of correctional or rehabilitative treatment that can best be provided by his commitment to a penal facility, in that prior attempts at correctional rehabilitat[ion] [had] failed." *Appellant's App.* at 30; *Tr.* at 355. Therefore, the trial court did provide a reasoned statement why Roshell was in need of correctional or rehabilitative treatment for a period longer than the advisory sentence.

Roshell also challenges the appropriateness of his sentence. The sentencing range for a Class A felony is a fixed term of between twenty and fifty years with the advisory sentence being thirty years. Ind. Code §35-50-2-4. Additionally, "[t]his court has authority to revise a sentence 'if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender.'" *Spitler v. State*, 908 N.E.2d 694, 696 (Ind. Ct. App. 2009)

17

(quoting Ind. Appellate Rule 7(B)), *trans. denied*. "Although Indiana Appellate Rule 7(B) does not require us to be 'extremely' deferential to a trial court's sentencing decision, we still must give due consideration to that decision." *Patterson v. State*, 909 N.E.2d 1058, 1062-63 (Ind. Ct. App. 2009) (quoting *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007)). We understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id*. at 1063. The defendant bears the burden of persuading this court that his sentence is inappropriate. *Id*.

When sentencing Roshell, the trial court found Roshell's honorable discharge from the Army as a mitigating factor. The trial court found as aggravating factors Roshell's criminal history, the repetitive nature of the offense, his history of substance abuse, his four petitions to revoke probation that had been found true, and that he was in need of correctional or rehabilitative treatment that could best be provided by his commitment to a penal facility.

Regarding the nature of the offense, on two separate occasions, he sold crack cocaine to Detective Lovett. During the first controlled buy, Roshell gave Detective Lovett .69 grams of crack cocaine in exchange for $100, and during the second transaction, he gave the detective .48 grams of crack cocaine in exchange for $100. On both occasions, the exchanges took place within 1,000 feet of at least one of the following, school property, a public park, a family housing complex, or a youth program center.

As to Roshell's character, the evidence showed that he was a fifty-five-year-old drug addict, who had served in the Army and received an honorable discharge in 1977.

He had an employment history, working in landscaping, that only went back to 2007. Roshell had a criminal history that began in 1993 and included extensive negative contacts with the criminal justice system. He had three felony convictions, one for possession of a narcotic, one for burglary, and one for attempted burglary. He also had three misdemeanor convictions that included a conviction for furnishing alcohol to a minor, one for false informing, and one for theft. Roshell had multiple petitions to revoke probation filed against him, four of which were found true. His repeated contacts with the criminal justice system demonstrate that prior attempts at correctional and rehabilitative treatments have failed.

Based on the above, we conclude that Roshell has failed to carry his burden of establishing that his sentence is inappropriate in light of the nature of the offense and the character of the offender.

Affirmed.

BAKER, J., concurs.

BROWN, J., concurs in part and dissents in part with separate opinion.

**IN THE**

# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEFFERY ROSHELL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A04-1108-CR-430 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**BROWN, Judge, concurring in part and dissenting in part.**

I concur with the majority, except as to the appropriateness of Roshell's sentence. As to the nature of the offense, the total amount of cocaine sold on two occasions was 1.17 grams, slightly over one-third of the amount necessary to elevate one count of dealing in cocaine from a class B felony to a class A felony absent the element of dealing within 1,000 feet of school property, a public park, a family housing complex, or a youth program center. Roshell received a total of $200 from the sales.

As to the character of the offender, Roshell is a fifty-five year old self-admitted drug addict. He achieved the rank of Corporal in the Army and was involved in combat duty in Vietnam for 6 months during the 1970's. While his criminal history is serious, it is not among the worst. The advisory sentence of thirty years for a class A felony clearly

accounts in this instance for the seriousness of the offense.

I would find the sentence inappropriate pursuant to Ind. App. Rule 7(B) and would remand for imposition of the advisory sentence of thirty years with ten years suspended to probation, concurrent on each count.